No. 87,651

JUANITA S. WILSON, *Appellant*, v. KANSAS STATE UNIVERSITY and THE INTERCOLLEGIATE ATHLETIC COUNSEL OF KANSAS STATE UNIVERSITY, INC., *Appellees*.

(44 P.3d 454)

Opinion filed April 19, 2002.

*Todd D. Powell*, of Fisher, Cavanaugh, Smith & Lemon, P.A., of Topeka, argued the cause, and *Bryan W. Smith*, of the same firm, was with him on the brief for appellant.

*James P. Nordstrom*, of Fisher, Patterson, Sayler, & Smith, L.L.P., of Topeka, argued the cause, and *Kristine A. Larscheid*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: Juanita Wilson sued Kansas State University and the Intercollegiate Athletic Counsel of Kansas State University, Inc., (KSU) following an incident in the defendants' football stadium restroom where Wilson came in contact with an unknown substance on a toilet seat. The district court granted KSU's motion for summary judgment, finding the recreational use exception of the Kansas Tort Claims Act (KTCA), K.S.A. 2001 Supp. 75-6104(o), shielded the defendants from liability for ordinary negligence. We affirm.

Wilson attended a football game at KSU's stadium and used the restroom at the stadium. Wilson noticed nothing wet on the toilet seat before using the toilet, but felt wetness on her left buttock from the toilet after sitting. She did not try to wipe the unknown substance from her body but rather pulled her pants back up over

the unknown substance. Wilson stopped to wash her hands but did not wash the unknown substance from her body before leaving the restroom. After leaving the stadium, Wilson noticed an uncomfortable burning sensation. She washed her left buttock with water when she arrived at her son's apartment.

Later, upon arriving at her own home, Wilson examined herself and noticed that part of her skin appeared black. Wilson went to the emergency room at a hospital where the doctor ordered a nurse to wash the area.

Wilson could not identify who put the unknown substance on the toilet seat and could not say how long it had been there. No other game attendees had similar complaints. It was estimated 5,700 people use the womens' restroom during a typical football game. The stadium staff check the restrooms six to seven times daily.

After analysis, a chemist determined that the substance had a pH factor in the range of 12. The pH is a measure of acidity or alkalinity of a solution, numerically equal to 7 for neutral and increasing with increasing alkalinity and decreasing with increasing acidity. None of the products used by the stadium staff on the toilet seats during the game had a similar pH factor.

Wilson filed a petition against KSU making the following allegations:

"6. That while in attendance at the game, the Plaintiff used one of the restrooms at the stadium. Unbeknownst to the Plaintiff there was a substance on the toilet seat in the bathroom which ultimately caused a severe burn to Plaintiff's buttocks which required significant medical treatment and has left the Plaintiff permanently scarred.

"7. The Plaintiff asserts that the Defendants were negligent in allowing a substance that could cause the severe chemical burns suffered by the Plaintiff to be left on the toilet after cleaning or were negligent in failing to use due care to prevent attendees of the game from being exposed to chemicals capable of causing severe burns while using restrooms at the game."

The petition did not assert gross and wanton negligence. KSU denied any liability for negligence in its answer.

KSU moved for summary judgment asserting that K.S.A. 2001 Supp. 75-6104(o), the recreational use exception of the KTCA,

provided immunity for ordinary negligence. KSU argued in the alternative that Wilson also failed to establish a genuine issue of material fact as to whether KSU was liable for negligence. In responding to the summary judgment motion, Wilson argued the recreational use exception does not apply to stadium restrooms. Wilson also argued that the application of the recreational use exception violates her equal protection and due process rights. Wilson contended that a genuine issue of material fact remained as to the issue of ordinary negligence.

In its order granting KSU's motion for summary judgment, the trial court noted Wilson failed to allege gross or wanton negligence and held the recreational use exception applied. The court also rejected Wilson's constitutional arguments. The court failed to reach the issue of whether Wilson presented a genuine issue of material fact regarding ordinary negligence. Wilson appealed.

Wilson argued the trial court erred in applying the recreational use exception of the KTCA. Specifically, Wilson argued that while the football stadium might be used for recreational purposes, the restrooms are not. KSU counters by contending that because the restrooms are an integral part of the stadium—a location clearly falling under the recreational use exception—immunity should also extend to cover negligent acts taking place in the restrooms.

In *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000), we reviewed the application of the KTCA: "Under the KTCA, governmental liability is the rule and immunity is the exception. [Citation omitted.] In order to avoid liability, the governmental entity has the burden of proving that it falls within one of the enumerated exceptions found in K.S.A. 75-6104."

K.S.A. 2001 Supp. 75-6104(o) states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

Whether the KTCA applies requires the interpretation of statute. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 482, 15 P.3d

338 (2000). The appellate court exercises unlimited review of questions of law.

The general application of the recreational use exception to the football stadium is not disputed. K.S.A. 2001 Supp. 75-6104, which contains the exceptions to liability, applies to governmental entities. A governmental entity is a "state or municipality." K.S.A. 2001 Supp. 75-6102(c). "State" is defined as "any department or branch of state government, or any agency, authority, institution or other instrumentality thereof." K.S.A. 2001 Supp. 75-6102(a). Lastly, K.S.A. 76-711(a) defines "state educational institution" to include "Kansas state university of agriculture and applied science." The stadium was public property intended to be used for recreational purposes.

The recreational use exception clearly provides immunity for KSU's negligent acts occurring on the football field. The issue in this case is whether the public property should be considered collectively, or if particular areas of a property should be considered separately for purposes of determining whether these areas fall within the recreational use exception.

*Jackson* applied the recreational use exception of the KTCA to a public school gymnasium. 268 Kan. at 321-22. *Jackson* considered three attacks to the application of the recreational use exception: (1) that the gymnasium was not "public property," (2) that the gymnasium was not a "park" or a "playground" or an "open area," and (3) that the property was not used for "recreational purposes." 268 Kan. at 323, 326. While the *Jackson* court rejected each of these three arguments, the analysis of the third argument is instructive. The plaintiff argued the gymnasium was used for mandatory educational classes, not recreational purposes. In response to the plaintiff's argument, the court quoted the statute, and noted that "[t]he injury need not be the result of 'recreation.' " 268 Kan. at 326. The *Jackson* court summarized its holding:

"The type of activity performed on the property when the injury occurs is not significant. Immunity depends on the character of the property in question, *i.e.*, whether the property was 'intended or permitted to be used for recreational purposes.' [Citation omitted.] That determination is made by considering whether

the property has been used for recreational purposes in the past or whether recreation has been encouraged." 268 Kan. at 330.

The dissent in *Jackson* disagreed that the recreational use immunity depended "solely on the character of the property in question and not on the activity performed at any given time." 268 Kan. at 335.

It is clear that the *Jackson* majority classified the property based on its intended use instead of analyzing the activity taking place at the time of the incident giving rise to the lawsuit. In the present case, the stadium was intended for recreational purposes. See 268 Kan. at 330 (adopting a definition of recreation as a refreshment of strength after toil, diversion, or play). While the restrooms independently have a nonrecreational usage, they serve no purpose but for the recreational nature of the football stadium, which attracts large numbers of people.

A recent decision of the Court of Appeals is also applicable. *Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, 16 P.3d 971 (2000), involved an actress' accidental stabbing during a play performed in a university auditorium. On appeal, the university argued it was immune from liability for ordinary negligence under the recreational use exception. The *Tullis* court quoted *Jackson*, holding that the "determinative issue is 'whether the property was intended or permitted to be used for recreational purposes.' " 28 Kan. App. 2d at 350. The court found the facts in *Jackson* indistinguishable because both the gymnasium in *Jackson* and the auditorium in *Tullis* involved open areas intended for recreational use.

Considering the ultimate purpose behind the property's usage is consistent with basic rules of statutory construction:

"The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be." *Robinett v. The Haskell Co.*, 270 Kan. 95, 100, 12 P.3d 411 (2000).

KSU has the burden to show that the property was "intended . . . to be used as a park, playground or open area for recreational purposes." K.S.A. 2001 Supp. 75-6104(o).

The trial court in this case relied on *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 548 N.E.2d 1383 (1990). The issue in *Annen* was "whether a local public entity is exempt from liability in ordinary negligence to one injured in a restroom building located in a public park." 192 Ill. App. 3d at 712. The *Annen* court quoted the language from its own Tort Immunity Act:

" '§ 3-106. Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury.' Ill. Rev. Stat. 1987, ch. 85, par. 3-106." 192 Ill. App. 3d at 712.

*Jackson* called the above language "remarkably similar" to the Kansas version. *Jackson*, 268 Kan. at 327. The *Annen* court began its analysis by noting the primary rule of statutory construction in Illinois is to "ascertain and effectuate the legislature's intent." 192 Ill. App. 3d at 713. The *Annen* court resolved the issue with the following:

"A restroom facility located within a park is a part of the park. While a restroom building itself is not intended to be used for recreational purposes, it allows a park user to continue using the park without having to leave the park to use restroom facilities. This increases the usefulness of the park and advances the legislative purpose." 192 Ill. App. 3d at 713.

The same can be said in the present case: The restrooms are part of the stadium. The restrooms allow people to continue enjoying the recreational purposes provided by the football games at the stadium without leaving. Likewise, the usefulness of the park is increased and the legislative purpose is advanced. As the trial court in this case noted, the restrooms are "an integral part of a football stadium." To the extent the legislature intended to encourage the building of recreational facilities with K.S.A. 2001 75-6104(o), extending immunity to cover negligent acts in restrooms is consistent with the legislative intent because such extension further increases the incentive to build recreational facilities. See *Jackson*, 268 Kan. at 330.

. The Illinois Appellate Court in *Lewis v. Jasper Co. Comm. Unit Sch. Dist.*, 258 Ill. App. 3d 419, 423-24, 629 N.E.2d 1227 (1994), held the Illinois recreational use exception applied to a pumphouse on a school playground:

"Plaintiff further argues that section 3-106 is limited to public property intended or permitted to be used for recreational purposes, and that the pumphouse on which plaintiff was injured had no recreational function. We disagree. The immunity provisions of section 3-106 have been held to apply to nonrecreational equipment and structures located on premises used for recreational activities. [Citations omitted.] In the case at bar, the playground was the property being used for recreational purposes, and the pumphouse was part of the property in question."

The Supreme Court of Wyoming in *DiVenere v. University of Wyoming*, 811 P.2d 273, 274 (Wyo. 1991), considered an action under the Wyoming Governmental Claims Act alleging·an injury resulting from a slip and fall on "an icy patch on the concourse leading to the upper deck of the University of Wyoming's football stadium." The Wyoming statute *waived* immunity for negligent acts in the operation of recreation areas, but contained an exception for sidewalks. On appeal, the university argued (1) the waiver of immunity did not mention ramps or concourses and (2) the sidewalk exception applied. First, the court considered the definition of "recreation" and concluded the football stadium is a recreation area as contemplated by the Wyoming statute. Second, the court considered and rejected the university's second argument that the sidewalk exception providing immunity applied. The court, in part, relied on the fact that the concourse was an "integral part of the recreation area itself." 811 P.2d at 276. The same would be said of the restrooms in our case.

In our case, the restrooms are not "incidentally" connected to the stadium but rather necessarily connected to the stadium by plan. A facility servicing large numbers of people must include restrooms. Likewise, the recreational use immunity extends to the restrooms because the restrooms are necessarily connected to the property.

Wilson argues that KSU has the burden to show the applicability of the recreational use exception and because there are no cases

extending immunity to restrooms, KSU has failed to carry this burden. We rejected this argument in *Jackson*, finding "[t]he fact that there have been no cases before the appellate courts of Kansas which have applied K.S.A. 75-6104(o) to the interior of a school does not prevent us from doing so now." 268 Kan. at 325.

Our decision here is also consistent with *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 785 P.2d 986 (1990). The plaintiff in *Nichols* was injured after he stumbled while running from a school football field through a "grassy swale or waterway which provided drainage from the high school playground" on his way to the locker room. 246 Kan. at 93-94. The plaintiff's argument against application of the recreational use exception in *Nichols* was that the injury resulted from negligent supervision, not from a condition of the premises. The court rejected this argument, finding the plain language of the statute covers any "use" of the property, whether supervised or unsupervised. The court then addressed an argument submitted by an *amicus curiae* party that "immunity is available to the school district only when the injury is a result of the condition of the public property used for recreational purposes." 246 Kan. at 96. The court rejected this argument:

"The language of K.S.A. 75-6104(n) is plain and unambiguous. If the legislature had intended to limit immunity to those situations in which an injury on public property, used for recreational purposes, was caused by conditions on the premises, it would have expressly so stated." 246 Kan. at 97.

The court's citation of K.S.A. 75-6104(n) refers to language which is now codified at K.S.A. 2001 Supp. 75-6104(o). The plaintiff in *Nichols* could have made the same argument as in the present case, *i.e.*, the recreational use exception does not apply to the "grassy swale or waterway" because it was not intended for recreation. *Jackson* summarized the *Nichols* holding as follows: "School districts are not liable for injuries which are the result of ordinary negligence and which occur on *or near* a football playing field." (Emphasis added.) 268 Kan. at 324. Arguably, no recreation takes place near a football field, yet the property is collectively intended for recreational purposes.

The plain language of the recreational use exception reaches the restrooms, not because of what the statutory language provides,

but because of what the language does *not* provide. K.S.A. 2001 Supp. 75-6104(o) contains the language "any public property intended or permitted to be used as a park, playground, or open area for recreational purposes," and is not limited to *"any portion* of public property utilized for recreational activities." Further, the use of "any" to modify "public property" shows an intent on the part of the legislature to establish a broad application of recreational use immunity.

Next, Wilson argued the application of K.S.A. 2001 Supp. 75-6104(o) to the facts of this case violates her equal protection rights under the United States and Kansas Constitutions. This court recently reviewed and rejected an equal protection challenge to K.S.A. 2001 Supp. 75-6104(o) in *Barrett v. U.S.D. No. 259,* 272 Kan. 250, 32 P.3d 1156 (2001). In *Barrett,* we held the legislature had a legitimate purpose for the disparate treatment caused by the recreational use exception. Further, we found the disparate treatment under the recreational use exception was rationally related to the legitimate purpose. This present case is indistinguishable, and based on the principles in *Barrett* we reject Wilson's equal protection argument.

Because we affirm the district court's summary judgment motion based on the recreational use exception, we need not address KSU's additional argument that Wilson has failed to establish sufficient facts of ordinary negligence.

Affirmed.

ALLEGRUCCI, J., concurs in the result.