(134 P.3d 683)
No. 94,634

HOWARD LANE, *Appellant*, v. ATCHISON HERITAGE CONFERENCE
CENTER, INC., *Appellee*.

Opinion filed June 2, 2006.

*John J. Benge*, of Benge Law Firm, of Lenexa, for appellant.

*Teresa L. Sittenauer* and *Amanda J. Kiefer* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before RULON, C.J., ELLIOTT and GREENE, JJ.

RULON, C.J.: Plaintiff Howard Lane appeals the district court's order granting summary judgment in favor of defendant Atchison Heritage Conference Center, Inc. (AHCC) under the recreational use exception of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq*. We affirm in part, reverse in part, and remand for further proceedings.

## Underlying Facts

For purposes of this appeal, the facts of this case are relatively undisputed. In 1999, the City of Atchison purchased a conference center and its grounds from Mount St. Scholastica, Inc., using federal block grant funds. The stated intention of the purchase was to attract groups to the Atchison area by providing conference and

event planning and services, thereby creating jobs and stimulating the local economy.

AHCC was incorporated to manage the conference center and administer the center's services through a year-to-year lease from the City of Atchison. The lease is automatically renewed absent 60 days' prior notice of termination from either party. AHCC is a wholly owned subsidiary of the Atchison Area Economic Development Corporation, and, by the terms of its lease with the City of Atchison, all gross revenue generated by the operation of the conference center is paid to Atchison for "economic development." As of September 2004, AHCC had not generated a profit.

The Board of AHCC consists of nine members, including a representative from the Atchison City Commission and the Atchison Area Economic Development Corporation, five members of the Atchison community at large, the City Manager of Atchison, and the President of the Atchison Chamber of Commerce.

Since the AHCC began management of the conference center in October 1999 until September 2004, the conference center has been used to host meetings on 428 different dates, retreats on 113 different dates, parties or reunions on 82 different dates, and weddings or wedding receptions on 70 different dates. The groups which used the facilities for these purposes ranged from individual members of the public to service organizations, such as Rotary International, to business organizations, such as MGP Ingredients, Inc., to government organizations, such as the Shawnee County Health Agency, to religious organizations, such as Blue Ridge Bible Church, to artistic groups, including the Heart of America Chorus. For many of the groups hosted at the center, AHCC also provided banquet services. In addition, AHCC provided some catering services to the community.

On December 31, 2002, AHCC hosted a New Years' Eve dance, which included a buffet dinner, for the public. The price of admission was $50 for an individual or $80 per couple. To provide musical entertainment, AHCC engaged "The Ranch Hands," led and managed by plaintiff.

During the course of the evening, a bartender working at the party drained the ice and water from a portable beverage cart at

the edge of the loading dock. Later, when plaintiff attempted to use the dock to load his band equipment into his van, he slipped on some ice and fell, breaking his right femur and hip.

On September 12, 2003, plaintiff sued AHCC for negligence in the maintenance of the loading dock on December 31, 2002. In its answer, AHCC raised, among other defenses, immunity from liability under the recreational use exception of the KTCA, K.S.A. 2002 Supp. 75-6104(o).

After initial discovery, AHCC filed a motion for summary judgment, claiming immunity from ordinary negligence and noting that plaintiff had alleged merely ordinary negligence in his petition. Plaintiff immediately filed a motion to amend his petition to allege gross and wanton negligence, which was granted, but he also challenged the application of KTCA liability exceptions under the facts of the case.

Eventually, the district court held a hearing on the summary judgment motion against plaintiff's claim for ordinary negligence. The district court was persuaded by AHCC's legal argument and found the recreational use exception to tort liability under the KTCA was applicable. The district court denied AHCC's motion for summary judgment as it pertained to plaintiff's claim for gross and wanton negligence, however. Shortly thereafter, plaintiff voluntarily withdrew his claim for gross and wanton negligence, choosing to appeal the determination that the KTCA recreational use exception applied.

The sole issue before the court on this appeal is whether the district court properly granted the defendant's motion for summary judgment on the plaintiff's claim for ordinary negligence by virtue of liability immunity under the KTCA. This court's standard of review of summary judgment motions is well established.

Ordinarily, summary judgment is only proper when the available pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate the absence of a genuine issue of material fact, so that the moving party is entitled to judgment as a matter of law. Appellate review is identical to the district court's review of such a motion to the extent that all facts and reasonable inferences must be interpreted in favor of the party against whom summary

judgment is sought. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005). However, when the parties do not dispute the pertinent facts upon which the summary judgment ruling was based, appellate review is unlimited. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

Governmental immunity from tort liability in Kansas is governed by the KTCA, and liability is the rule, not the exception. In order to avoid tort liability, a qualified government entity must prove that one of the exceptions in 75-6104 applies. *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000). In this appeal, AHCC relies solely upon the recreational use exception in K.S.A. 2002 Supp. 75-6104(o), which states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

Plaintiff challenges the district court's findings that AHCC is a governmental entity subject to the protection of the KTCA; the conference center where the injury occurred is "public property" within the meaning of the exception; and the conference center is intended or permitted to be used as a recreational area. Resolution of these issues requires statutory interpretation, which is a question of law. Consequently, this court possesses unlimited review. See *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 113, 991 P.2d 889 (1999).

The primary goal in statutory construction is to discern and implement the intent of the legislature, if such intent may be reasonably ascertained. Courts must presume the legislature expressed its intent through the language of the statute. Therefore, where a statute is plain and unambiguous, a court should give effect to the expressed intent without resort to principles of statutory construction. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005).

## Instrumentality of Municipality

By its plain language, the exceptions to liability under 75-6104 are limited to governmental entities. A governmental entity is defined by statute as "state or municipality." K.S.A. 2005 Supp. 75-6102(c). Within the meaning of the KTCA, "state" is defined as "the state of Kansas and any department or branch of state government, or any agency, authority, institution or other instrumentality thereof," and "municipality" includes "any county, township, city, school district, or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof." K.S.A. 2005 Supp. 75-6102(a) and (b).

In arguing their respective positions, the parties cite *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1058, 934 P.2d 121 (1997) (athletic association deemed a government entity for purposes of KTCA), and *League of Kansas Municipalities v. Board of Shawnee County Comm'rs*, 24 Kan. App. 2d 294, 299-300, 944 P.2d 172 (1997) (League considered an instrumentality of its member municipalities for ad valorem tax purposes). We also find instructive *Rockers*, 268 Kan. at 114 (" 'This court has consistently held that the Kansas turnpike authority is an arm or agency of the state, created by the legislature to perform an essential governmental function.' [Citation omitted.]"), and *Bonewell v. City of Derby*, 236 Kan. 589, 593, 693 P.2d 1179 (1985) (Jaycees deemed a governmental instrumentality of the municipality for purposes of KTCA).

A synthesis of these cases leads to the inevitable conclusion that AHCC is an instrumentality of the City of Atchison. Atchison purchased the conference center and grounds with the purpose of providing conference and retreat services in the community to promote economic development. Economic development is a legitimate function of government. See *Davidson Bros., Inc. v. D. Katz & Sons, Inc.*, 274 N.J. Super. 159, 169-70, 643 A.2d 642 (1994); *Purdin v. Copperas Cove Economic Development Corp.*, 143 S.W.3d 290, 299 (Tex. App. 2004).

Furthermore, like the athletic association in *Gragg*, AHCC is substantially controlled by the City of Atchison through the terms of its annual lease, the composition of AHCC's Board, and the

control over capital improvement funds for the conference center facilities. The district court properly concluded that AHCC was an instrumentality of the City of Atchison for the specific purpose of operating the conference center.

## Public Property

Plaintiff further contends the conference center is not public property to the extent such property is leased to a for-profit corporation for its exclusive use. "Public property" is not defined by statute. However, the mere existence of a lease of public property to an instrumentality of the state or a municipality does not seem to destroy the public character of the property. See *Jackson*, 268 Kan. at 323.

The conference center hosts many diverse segments of the public, including business organizations, private parties or weddings, religious organization retreats, service organization meetings, and government organization meetings. A review of the events summary included in the record on appeal quickly reveals the breadth of the public enjoying the use of the facility. As a result, plaintiff's argument that the conference center has lost its public character by virtue of the lease to AHCC is not persuasive.

## Recreational Use

Plaintiff's final argument on this appeal is that the conference center is not property intended for a recreational use. The pivotal case defining the scope of the recreational use exception under 75-6104(o) is *Jackson*.

In *Jackson*, a negligence suit was filed against a school district for injuries sustained by a middle school student during a required exercise in physical education class. 268 Kan. at 321. The school district claimed immunity under the recreational use exception of the KTCA. First, the *Jackson* court reviewed existing precedent interpreting 75-6104(o), noting that previous cases all involved injuries occurring outdoors on public property. 268 Kan. at 324-25 (citing *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 785 P.2d 986 [1990]; *Lanning v. Anderson*, 22 Kan. App. 2d 474, 921 P.2d 813, *rev. denied* 260 Kan. 994 [1996]; *Boaldin v. University of Kansas*, 242

Kan. 288, 747 P.2d 811 [1987]). However, our Supreme Court reasoned that "open area" includes enclosed facilities. A gymnasium was also an open area intended for recreational purposes. 268 Kan. at 325; see also *Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, 350-51, 16 P.3d 971 (2000) (extending definition of "open area" to encompass a university theater); *Wright v. U.S.D. No. 379*, 28 Kan. App. 2d 177, 179-80, 14 P.3d 437, *rev. denied* 270 Kan. 904 (2000) (finding that high school wrestling room constituted an "open area" within the meaning of K.S.A. 75-6104[o]).

Turning to the recreational nature of the activity causing Jackson's injury, the *Jackson* court reasoned the fact an injury occurred in a nonrecreational activity was not relevant to a determination of the applicability of the recreational use exception. Adopting the reasoning of the Illinois Supreme Court and Illinois Court of Appeals interpreting a similar statutory provision, our Supreme Court held the overall character of the property was the pertinent issue.

"The purpose of the immunity statute is to encourage the development and maintenance of parks, playgrounds, and other recreational areas. The type of activity performed on the property when the injury occurs is not significant. Immunity depends on the character of the property in question, *i.e.*, whether the property was 'intended or permitted to be used for recreational purposes.' [Citation omitted.] That determination is made by considering whether the property has been used for recreational purposes in the past or whether recreation has been encouraged." 268 Kan. at 330.

After *Jackson*, our Supreme Court further expanded the scope of 75-6104(o) by holding that facilities integral to the functioning of a public and open area used for recreational purposes are also covered by the recreational use exception, despite possessing a nonrecreational character in themselves. See *Wilson v. Kansas State University*, 273 Kan. 584, 44 P.3d 454 (2002).

In *Wilson*, a patron to the Kansas State University football stadium was burned by chemicals with high alkalinity left on the toilet seat in the bathroom of the stadium. Again borrowing the reasoning of the Illinois Supreme Court, our Supreme Court held that the bathrooms served as an integral or necessary part of the whole facility, which undeniably was intended for recreational purposes. 273 Kan. at 588 ("While the restrooms independently have a non-

recreational usage, they serve no purpose but for the recreational nature of the football stadium, which attracts large numbers of people.").

According to the reasoning of *Wilson*, the loading dock in this case, while possessing no independent recreational purpose, is merely instrumental in providing access to the conference center for the delivery of supplies or, as in this case, equipment. Therefore, the mere fact that plaintiff's injury occurred in an area not specifically intended for recreation does not bar AHCC from claiming immunity under 75-6104(o), if the intended purpose of the conference center is recreation.

However, the recreational character of the conference center is ephemeral, at best. In *Jackson*, our Supreme Court quoted, with approval, a lengthy portion of the Illinois Court of Appeals opinion in *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996). The Illinois Court of Appeals opined:

" 'Recreation is defined as "refreshment of the strength and spirits after toil: DIVERSION, PLAY." Webster's Third New International Dictionary 1899 (1986). Play "suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment." (Emphasis omitted.) Webster's Third New International Dictionary 1737 (1986). . . . Accordingly, *although some students may enjoy gym class, it cannot be said to be recreation.* (Emphasis added.)

" 'Because public property may have more than one intended use [citation omitted] however, the fact that the gymnasium was used for physical education is not dispositive of whether section 3-106 immunity applies. If the school gymnasium was encouraged, intended, or permitted to be used for recess, extracurricular events, or other recreational, noncompulsory activities, then section 3-106 would apply, *provided that the recreational use was more than incidental.*' " *Jackson*, 268 Kan. at 330.

While the facility in question is not a gymnasium, the reasoning provided by the Illinois Court of Appeals is instructive. In order to qualify for the recreational use exception, a facility's recreational use must be more than merely incidental to its primary function. Based upon the evidence in the record, the overwhelming purpose to which the conference center has been employed is not recreation. The conference center has primarily been used for meetings and retreats. Most meetings and retreats are didactic in nature;

they are intended to instruct, disseminate information, or make decisions concerning business operations or policies. In short, the majority of the events held at the conference center are not primarily for the purpose of rest and entertainment, but for the purpose of accomplishing one or more tasks or goals.

For this reason, the conference center may be distinguished from the community center found to possess a recreational purpose by the Illinois Court of Appeals. See *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 707 N.E.2d 285, *rev. denied* 184 Ill. 2d 558 (1999). The *Kayser* court ruled that the Village of Warren was immune from an ordinary negligence claim resulting from an injury at its community center. Noting that the center was a multipurpose facility, the court nonetheless reasoned:

"Here, the public benefits from the use of a public building in much the same way as it benefits from a park or a playground. Many of the Warren community building's activities, such as preschool Christmas concerts, receptions, and family picnics, are permitted inside the building solely for the public's enjoyment, diversion, and amusement; these are activities analogous to Navy Pier's carnival rides and theatrical and musical performances or the Prairie Capital Convention Center's expositions, rodeos, and boxing matches. In other words, they are activities the Warren community building permitted for the public's recreation. We hold, therefore, that the Warren community building is public property intended or permitted to be used for recreational purposes consistent with section 3-106 of the Tort Immunity Act." 303 Ill. App. 3d at 203.

Here, recreation does not appear to have been the intended purpose of the City of Atchison in purchasing and administering the conference center. According to the only information contained in the record, the intended purpose of the conference center was primarily to stimulate economic development in Atchison by attracting groups to Atchison for conferences and other group activities. According to the lease terms, a secondary intention was to generate financial resources which could be applied to economic development within the Atchison community.

There is no question that some of the events occurring within the conference center were recreational, but such events were merely incidental to the primary purpose of the facilities—to provide a source of economic development for the community of Atchison. The record provides no indication that recreational gath-

erings are given a preferential rate or a scheduling preference over business gatherings. The use of the facilities by artistic workshops, parties, or other activities reasonably classified as "recreational" seems entirely a matter of happenstance.

On the night of plaintiff's injury, the conference center was clearly used for a recreational purpose, a dance, yet the particular use of the facility at the time of an injury is not determinative of the applicability of the recreational use exemption articulated by K.S.A. 2002 Supp. 75-6104(o). See *Jackson*, 268 Kan. at 330.

The expansion of the recreational use exception advocated by AHCC and adopted by the district court in this case threatens to swallow the rule providing for tort liability. Nearly every state government building holds entertainment or recreational activities on one occasion or another, from performances by school choirs or bands to parties and receptions for various occasions. Extending the recreational use exception to all of these public facilities would effectively abrogate the legislative intent in enacting the KTCA.

Under the facts presented in the record on appeal, AHCC's primary use of the conference center has not been recreational. Because the governmental entity bears the burden of establishing the applicability of an exception to tort liability under the KTCA, summary judgment on the grounds of tort immunity under K.S.A. 2002 Supp. 75-6104(o) was improper.

We affirm in part, reverse in part, and remand for further proceedings.