No. 94,634

HOWARD LANE, *Appellant*, v. ATCHISON HERITAGE CONFERENCE CENTER, INC., *Appellee*.

(153 P.3d 541)

Opinion filed March 16, 2007.

*John J. Benge*, of the Benge Law Firm, of Lenexa, argued the cause and was on the briefs for appellant.

*Teresa L. Watson*, of Fisher, Patterson, Sayler & Smith, L.L.P., Topeka, argued the cause and was on the brief for appellee.

*Wm. Scott Hesse*, assistant attorney general, was on the brief for *amicus curiae* State of Kansas.

The opinion of the court was delivered by

DAVIS, J.: Howard Lane was injured when he slipped and fell on ice at the loading dock of the Atchison Heritage Conference Center (AHCC) on December 31, 2002. He later brought this negligence action against the AHCC to recover for his injuries. The AHCC moved for summary judgment on the basis that it was immune from liability under the recreational use exception to the Kansas Tort Claims Act (KTCA). The district court granted its motion and entered final judgment in favor of the AHCC.

The Court of Appeals reversed in *Lane v. Atchison Heritage Conf. Center, Inc.*, 35 Kan. App. 2d 838, 134 P.3d 683 (2006), concluding that the recreational use exception of the KTCA, K.S.A. 2006 Supp. 75-6104(o), did not apply where the facility's recreational use was only incidental to its primary function. Because the AHCC's "primary function" was not recreational, the court held that the AHCC had not met its burden of establishing immunity from the KTCA. We granted AHCC's petition for review, reverse the Court of Appeals, and affirm the decision of the district court.

Initially, Lane's appeal to the Kansas Court of Appeals involved three arguments: (1) that the AHCC was not an instrumentality of a municipality for purposes of the KTCA; (2) that the conference center was not public property; and (3) that the recreational use exception under K.S.A. 2006 Supp. 75-6104(o) should not apply. The Court of Appeals affirmed the district court's holding with regard to the first two issues, and Lane's petition for review does not raise those issues again. Thus, the sole issue before this court is whether the recreational use exception applies under the facts of this case.

Facts

In 1999, the City of Atchison (the City) purchased land and buildings with federal block grant funds in order to establish a city conference center. The motivation behind the new conference center was to attract events to the area, provide conference and event planning services, create jobs, and stimulate the local economy. Later that year, the City formed the Atchison Heritage Conference Center (AHCC) to maintain the center and administer the center's programs. The AHCC is a for-profit Kansas corporation

and a wholly owned subsidiary of the Atchison Area Economic Development Corporation (AAEDC), though it has not yet turned a profit in the years since it began operation.

The City owns the conference center and leases it to the AHCC on a yearly basis. The lease states that the conference center will provide "meeting, catering and banquet facilities." The AHCC states in its brief that since its opening, the center has been used for "many activities," including:

"Rotary and Kiwanis meetings, which feature special guest speakers and informative presentations; local bridge club card games; public school dances; Quilter's Guild retreats and other meetings, which feature sewing practice and demonstrations; Theater Atchison events; Atchison Area Chamber of Commerce meetings; local bar association meetings; beauty pageants; Society for Creative Anachronism activities, which include the practice and demonstration of outdoor cooking, Renaissance-era crafts, and sewing; and Heart of America Chorus retreats and other meetings, which feature singing and musical practice."

The Court of Appeals panel below summarized the activity at the conference center from October 1999 through September 2004 as being used "to host meetings on 428 different dates, retreats on 113 different dates, parties or reunions on 82 different dates, and weddings or wedding receptions on 70 different dates." 35 Kan. App. 2d at 840.

The AHCC hosted a New Years' Eve dance on December 31, 2002. The dance, which was open to the public, included a buffet dinner and musical entertainment; price of admission was $50 for an individual or $80 per couple. The AHCC hired "The Ranch Hands," a musical group led and managed by Lane, to provide the music.

During the course of the evening, a bartender at the party drained ice and water from a portable beverage cart onto the conference center's loading dock. Later on, when Lane used the dock to load the band equipment into his van, he slipped and fell on the ice, causing him to break his right femur and hip.

Lane brought suit in September 2003 against the AHCC, alleging that the center's negligence in the maintenance of the loading dock caused his injuries. Among the defenses raised in its answer,

the AHCC claimed immunity from liability under the recreational use exception to the KTCA, K.S.A. 2006 Supp. 75-6104(o).

After some discovery, the AHCC filed a motion for summary judgment, claiming that it was immune from liability for ordinary negligence under the recreational use exception to the KTCA and that Lane had only alleged ordinary negligence in his petition. Lane moved to amend his petition to allege gross and wanton negligence, and challenged the application of the KTCA exception. The court granted his motion to amend.

At the hearing on the AHCC's summary judgment motion, the district court found that the recreational use exception to tort liability under the KTCA was applicable and thus granted the motion with respect to Lane's claim for ordinary negligence. The court denied the AHCC's motion with respect to Lane's claim for gross and wanton negligence (since the recreational use exception does not apply to such conduct).

Shortly thereafter, Lane voluntarily withdrew his claim for gross and wanton negligence against the AHCC, and the district court entered final judgment in favor of the AHCC in May 2005. Lane appealed.

In its decision, the Court of Appeals recognized that K.S.A. 2006 Supp. 75-6104(o) states that the exception applies to " 'any public property intended or permitted to be used as a[n] . . . open area for recreational purposes,' " but held that "[i]n order to qualify for the recreational use exception, a facility's recreational use must be more than merely incidental to its primary function." 35 Kan. App. 2d at 842, 846. After reviewing the center's activities, the court concluded that "the overwhelming purpose to which the conference center has been employed is not recreation," but rather "[t]he conference center has primarily been used for meetings and retreats." 35 Kan. App. 2d at 846.

The Court of Appeals acknowledged that "some of the events occurring within the conference center were recreational, but such events were merely incidental to the *primary purpose* of the facilities—to provide a source of economic development for the community of Atchison." (Emphasis added.) 35 Kan. App. 2d at 847. "On the night of plaintiff's injury, the conference center was clearly

used for a recreational purpose, a dance, yet the particular use of the facility at the time of an injury is not determinative of the applicability of the recreational use exemption articulated by K.S.A. 2002 Supp. 75-6104(o)." 35 Kan. App. 2d at 848 (citing *Jackson v. U.S.D. 259*, 268 Kan. 319, 330, 995 P.2d 844 [2000] [*Jackson I*]). Thus, because the *"primary use* of the conference center has not been recreational," the court held that the recreational use exception did not apply. (Emphasis added.) 35 Kan. App. 2d at 848.

Finally, the Court of Appeals concluded that its "primary purpose" interpretation of K.S.A. 2006 Supp. 75-6104(o) prevented the recreational use exception from eliminating the rule for tort liability of government actors:

"The expansion of the recreational use exception advocated by AHCC and adopted by the district court in this case threatens to swallow the rule providing for tort liability. Nearly every state government building holds entertainment or recreational activities on one occasion or another, from performances by school choirs or bands to parties and receptions for various occasions. Extending the recreational use exception to all of these public facilities would effectively abrogate the legislative intent in enacting the KTCA." 35 Kan. App. 2d at 848.

## Standard of Review

The resolution of the question whether the recreational use exception to the KTCA, K.S.A. 2006 Supp. 75-6104(o), renders the AHCC immune from liability involves a question of statutory interpretation, over which an appellate court exercises unlimited review. *Wilson v. Kansas State University*, 273 Kan. 584, 586-87, 44 P.3d 454 (2002).

" 'The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.' " *Wilson*, 273 Kan. at 588 (quoting *Robinett v. The Haskell Co.*, 270 Kan. 95, 100, 12 P.3d 411 [2000]).

A court may create an exception to a statute only if such an exception "clearly appears to have been intended by the legislature. [Citation omitted.]" *Ballweg v. Farmers Ins. Co.*, 228 Kan. 506, 510, 618 P.2d 1171 (1980).

Discussion and Analysis

K.S.A. 2006 Supp. 75-6104(o) provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

Unless the above statutory exception to liability applies, a governmental entity "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2006 Supp. 75-6103(a). This court has explained that "[u]nder the KTCA, governmental liability is the rule and immunity is the exception. [Citation omitted.] In order to avoid liability, the governmental entity has the burden of proving that it falls within one of the enumerated exceptions found in K.S.A. 75-6104. [Citation omitted.]" *Jackson I*, 268 Kan. at 322.

In our examination of the recreational exemption as applied to a public school's gymnasium, we noted in *Jackson I*:

"The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community." *Jackson I*, 268 Kan. at 331.

In concluding that the use of the public school's property qualified for the exemption, *Jackson I* emphasized that a governmental entity has qualified immunity from tort liability for ordinary negligence when that entity is "intended *or permitted*" to be used for recreational purposes:

"Immunity depends on the character of the property in question, *i.e.*, whether the property was 'intended or permitted to be used for recreational purposes.' [Citation omitted.] That determination is made by considering whether the property has been used for recreational purposes in the past or whether recreation has been encouraged." *Jackson I*, 268 Kan. at 330 (citing *Bubb v. Springfield School Dist.*, 167 Ill. 2d 372, 379, 657 N.E.2d 887 [1995]).

Under the facts of this case, the AHCC was *permitted* to be used for recreational purposes. As noted in the Court of Appeals' decision, the injury to Lane occurred at a New Year's Eve party, which was "a recreational purpose." *Lane*, 35 Kan. App. 2d at 848. Moreover, the record demonstrates that the conference center had been used for similar recreational events on other occasions, including weddings, receptions, public school dances, theater events and music concerts, and beauty pageants. See also 35 Kan. App. 2d at 840 (finding that the center had been used for parties or reunions on 82 different dates, and weddings or wedding receptions on 70 different dates since 1999). Thus, in accordance with our decision in *Jackson I*, the AHCC "has been used for recreational purposes in the past" and is therefore entitled to immunity under the recreational use exception to the KTCA. *Jackson I*, 268 Kan. at 330.

Our conclusion rests not only with *Jackson I*, for this court has repeatedly held that the statutory language granting immunity to governmental facilities "intended or permitted" to be used for recreational purposes should be read broadly, and Kansas courts should not impose additional hurdles to immunity that are not specifically contained in the statute. For example, an injury need not occur during the course of a recreational activity for the recreational use exception to apply. See *Wilson*, 273 Kan. at 588; *Jackson I*, 268 Kan. at 330. As this court has stated,

"[i]mmunity under K.S.A. 75-6104(o) depends on the character of the property in question and not the activity performed at any given time. The plain wording of the statute only requires that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of recreational activity." *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 257, 32 P.3d 1156 (2001) (citing *Jackson I*, 268 Kan. 319, Syl. ¶ 6).

See also *Gonzales v. Board of Shawnee County Comm'rs*, 247 Kan. 423, 428, 799 P.2d 491 (1990) (holding that the recreational use

exception could still apply when the government charged an admittance fee).

Moreover, this court has reiterated that a particular facility must be viewed collectively to determine whether it is used for recreational purposes. Under this reasoning, the court in *Wilson* held that the restrooms at Kansas State University's football stadium, although not in and of themselves recreational, were immune from liability because they were "necessarily connected" to property that had a recreational use. See *Wilson*, 273 Kan. at 590. Similarly, the court in *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 94, 785 P.2d 986 (1990), held that the recreational use exception applied to a "grassy swale or waterway" *near* a public school's football field. See also *Jackson I*, 268 Kan. at 324 (explaining *Nichols*).

Nevertheless, the Court of Appeals, keying upon language in *Jackson I*, found that "[i]n order to qualify for the recreational use exception, a facility's recreational use must be more than merely incidental to its primary function." *Lane*, 35 Kan. App. 2d at 846. Concluding that the "majority of the events held at the conference center are not primarily for the purpose of rest and entertainment," the court held that the recreational use exception could not apply. *Lane*, 35 Kan. App. 2d at 847. Thus, the Court of Appeals effectively held that in order for the exception to apply, recreation must be *the primary purpose* in maintaining a facility (not merely one of many purposes or an ancillary purpose). According to the Court of Appeals, AHCC's recreational use was "merely incidental to the primary purpose of the facilities—to provide a source of economic development for the community of Atchison." 35 Kan. App. 2d at 847. In addition, the Court of Appeals noted that the recreational use exception could not apply to the AHCC because "[t]he record provides no indication that recreational gatherings are given a preferential rate or a scheduling preference over business gatherings. The use of the facilities by artistic workshops, parties, or other activities reasonably classified as 'recreational' seems entirely a matter of happenstance." 35 Kan. App. 2d at 847-48.

In support of its opinion, the Court of Appeals quotes the following language from *Jackson I*, which, in turn, quoted the Illinois

Court of Appeals in *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996):

"' "Because public property may have more than one intended use [citation omitted] however, the fact that the gymnasium was used for physical education is not dispositive of whether section 3-106 immunity applies. If the school gymnasium was encouraged, intended, or permitted to be used for recess, extracurricular events, or other recreational, noncompulsory activities, then section 3-106 would apply, *provided that the recreational use was more than incidental.*"'" *Lane*, 35 Kan. App. 2d at 846 (quoting *Jackson I*, 268 Kan. at 330 [quoting *Ozuk*, 281 Ill. App. 3d at 244]).

The *Jackson I* court adopted the holding of *Ozuk* that a recreational use must be "'more than incidental'" in order for the exception in K.S.A. 2006 Supp. 75-6104(o) to apply. See *Jackson I*, 268 Kan. at 330; see also *Wilson*, 273 Kan. at 590 (reasoning that "the restrooms are not 'incidentally' connected to the stadium but rather necessarily connected to the stadium by plan"); *Jackson v. U.S.D. No. 259*, 29 Kan. App. 2d 826, 831, 31 P.3d 989 (2001) (*Jackson II*) (citing this court's opinion in *Jackson I* and stating that, for the recreational use exception to apply, "[t]he minimum amount of recreational use must be something more than incidental"); *Wright v. U.S.D. No. 379*, 28 Kan. App. 2d 177, 179, 14 P.3d 437, *rev. denied* 270 Kan. 904 (2000) (considering whether "any alleged recreational use intended or permitted in [a public school's] wrestling room was more than incidental").

The language in *Jackson I* that the use must be "more than incidental" does not equate with the language adopted by the Court of Appeals that the use must be *the primary purpose* in maintaining a facility. *Lane*, 35 Kan. App. 2d at 847. The Court of Appeals' opinion ignores the test set forth in *Jackson I* and the more recent cases dealing with the precise issue we must resolve. The clear statutory language of K.S.A. 2006 Supp. 75-6104(o) provides that the recreational use exception to the KTCA applies when property is "intended or permitted" to be used for recreational purposes, and the correct test to be applied under this statute is "whether the property has been used for recreational purposes in the past or whether recreation has been encouraged." *Jackson I*, 268 Kan. at 330.

Prior opinions of Kansas appellate courts, as well as the opinions of courts from other states, indicate that the Court of Appeals' opinion is an incorrect reading of the recreational use exception. For example, this court noted in *Jackson I* that the injury in that case (at the school gymnasium) occurred during the course of a mandatory school gym class, which could not be considered recreation for immunity purposes. See 268 Kan. at 326, 330. The plaintiffs in *Jackson I* asserted that the gymnasium there "was 'not constructed and maintained for any purpose other than for education.'" 268 Kan. at 326. Nevertheless, this court remanded the case for a determination of "whether the school gymnasium [was] intended or permitted to be used for recreational purposes." 268 Kan. at 333.

On remand in *Jackson II*, the Court of Appeals found that the gymnasium had been used for a number of activities in addition to education-related gym class:

"'During the 1994-95 school year, the Hamilton Middle School gymnasium was used by the public. The Wichita Police Department had a substation located at the school, and the police officers used the gymnasium during non-school hours for recreational activities such as basketball. AYSO soccer groups were allowed to use the gym during bad weather. Church groups in various basketball leagues would use the gymnasium for tournaments on Friday evenings and/or weekends. The Emmanual Baptist Church, located directly across the street from Hamilton Middle School, also used the school's gymnasium from time to time. YMCA-sponsored activities took place in the Hamilton Middle School gymnasium after school hours, including arts, crafts and cheerleading. There were also after-school activities sponsored jointly by the City of Wichita and USD 259 to help care for children after school had been dismissed.'" *Jackson II*, 29 Kan. App. 2d at 832.

In light of these activities, the *Jackson II* court held that "the room in the present case was used by community groups for recreational purposes beyond incidental use" and therefore the gymnasium was entitled to immunity under the recreational use exception. 29 Kan. App. 2d at 832.

The *Jackson* opinions did not debate that the primary purpose of the school gymnasium was for physical education classes—a non-recreational use. Moreover, the opinions do not discuss whether the other uses of the gymnasium were more than "incidental" to its education-related purpose. There is no indication that the rec-

reational activities listed were given preference over school-related uses, or that the use of the gym by these groups was more than mere "happenstance." Thus, under the reasoning of the appellate court in this case, the gymnasium would not have been granted immunity. This, however, was not the outcome of the *Jackson* courts' decisions. See also *Wright*, 28 Kan. App. 2d at 179-80 (holding that the recreational use exception to the KTCA applied to a school's wrestling room).

The outcome of these previous cases—which found the recreational use exception to apply even when recreation was not the "primary purpose" of a facility—is similar to the conclusion by Illinois courts which have considered like issues. In *Jackson I*, the court relied heavily on the decisions of Illinois courts, including *Ozuk*, interpreting the state's recreational use exception, Ill. Rev. Stat. 1987, ch. 85, par. 3-106, which this court described as being "remarkably similar" to the language of K.S.A. 75-6104(o). *Jackson I*, 268 Kan. at 327. The Illinois statute states:

> " ' "§ 3-106. Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1987, ch. 85, par. 3-106.' " *Wilson*, 273 Kan. at 589 (quoting *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 712, 548 N.E.2d 1383 [1990]).

Of particular interest here, the Illinois Supreme Court explicitly rejected an opinion by the Illinois Court of Appeals holding that the application of section 3-106 required an examination of the subject property's primary purpose (similar to the argument made by the appellate court here) in *Bubb v. Springfield School Dist.*, 167 Ill. 2d 372, 657 N.E.2d 887 (1995). There, the court considered whether the state's recreational use exception applied to a concrete area surrounding a school building. The intermediate appellate court found that the property had both recreational and nonrecreational uses, but its primary purpose was nonrecreational. Under this analysis, the intermediate court held that the exception

did not apply, because the injury had not occurred during the course of recreational use.

The Illinois Supreme Court rejected this "primary purpose" analysis, stating:

" 'The test announced in *Bubb v. [Springfield School District*, 263 Ill. App. 3d 942, 636 N.E.2d 4 (1994)] ignores established and well-reasoned Illinois appellate court decisions holding that section 3-106 immunity is triggered by the recreational character of the property, *i.e.*, whether the property in question is "intended or permitted to be used for recreational purposes." [Citation omitted.] *Nothing in the statute requires an examination of the property's primary purpose.* Indeed, an inquiry into a facility's primary purpose would undoubtedly involve genuine issues of material fact, precluding summary judgment in virtually all cases under section 3-106 of the Tort Immunity Act. We do not believe the Illinois legislature intended to create a triable issue of fact each and every time a public entity raised the bar of tort immunity under section 3-106 of the Act.' " (Emphasis added.) *Bubb*, 167 Ill. 2d at 380-81 (quoting *Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599, 604 [7th Cir. 1995]).

The Illinois high court also rejected the appellate court's concerns that a disregard of the primary purpose would result in too broad of an application of the exception. The court recognized that "[p]roviding immunity to any public property where recreation might occur would eviscerate the duty codified in section 3-102," and thus, "at some point, the use of public property for recreation may be so incidental that section 3-106 does not apply." *Bubb*, 167 Ill. 2d at 382. To resolve this dilemma, the court adopted the same test currently applied in Kansas, explaining, "We do not believe that section 3-106 applies to any public area where recreation might occur. . . . In determining the nature of public property, courts have therefore considered *whether the property has been used for recreation in the past or whether recreation has been encouraged there.*" (Emphasis added.) 167 Ill. 2d at 381-82; see also *Jackson I*, 268 Kan. at 330 (citing *Bubb*, 167 Ill. 2d at 379) (stating that a determination of whether the recreational use exception applies in Kansas turns on "whether the property has been used for recreational purposes in the past or whether recreation has been encouraged").

The *Bubb* court ultimately held that the concrete area around the school was subject to the recreational use exception. See 167

Ill. 2d at 383 ("Although the primary purpose of the concrete area may not have been recreational, the facts show that the school intended that school children use this area as part of the playground. Public property may have more than one intended use.").

In addition, Illinois courts have expressly held that community centers (similar to the conference center in this case) are subject to the recreational use exception. In *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 203, 707 N.E.2d 285 (1999), an Illinois appellate court explained:

> "In the present case, the only evidence of the use of the Warren community building . . . establishes that the building is used for family picnics, club meetings, receptions, bake sales, book sales, Chamber of Commerce meetings, preschool Christmas concerts, and long-range-planning committee group suppers and meetings. . . . [T]he Warren community building is a multipurpose facility used for recreational and nonrecreational activities.
>
> "Here, the public benefits from the use of a public building in much the same way as it benefits from a park or playground. Many of the Warren community building's activities, such as preschool Christmas concerts, receptions, and family picnics, are permitted inside the building solely for the public's enjoyment, diversion, and amusement . . . . In other words, they are activities the Warren community building permitted for the public's recreation. We hold, therefore, that the Warren community building is public property intended or permitted to be used for recreational purposes consistent with section 3-106 of the Tort Immunity Act."

The Court of Appeals below noted the decision in *Kayser* but nevertheless sought to distinguish the case. See *Lane*, 35 Kan. App. 2d at 847. However, the opinion is less than clear as to why *Kayser* is distinguishable. The *Lane* court seems to emphasize the fact that the community center in *Kayser* was "found to possess a recreational purpose" (though it recognizes that the center in that case was "a multipurpose facility"), while "recreation does not appear to have been the intended purpose of the City of Atchison in purchasing and administering the conference center" here. 35 Kan. App. 2d at 847. With no disrespect meant to the Court of Appeals in this case, this attempt to distinguish the two centers seems disingenuous. Both the conference center here and the community center in *Kayser* have recreational and nonrecreational uses. In both cases, the facilities have permitted recreational activities on

numerous occasions. Under the statutory language in both Illinois and Kansas, the recreational use exception should apply in this case.

Conclusion

The plain language of K.S.A. 2006 Supp. 75-6104(o) states that facilities that are "intended or permitted" to be used for recreational purposes are immune from tort liability. There is nothing in the statutory language, or in any prior opinion of this court, that would support the Court of Appeals' interpretation that the application of the recreational use exception turns on an analysis of a facility's primary purpose. Furthermore, the position adopted by the Court of Appeals below has been explicitly rejected by Illinois courts when interpreting a similar provision.

The recreational use exception to the KTCA applies when property is "intended or permitted" to be used for recreational purposes. This court has explained that the correct test to be applied under K.S.A. 2006 Supp. 75-6104(o) is "whether the property has been used for recreational purposes in the past or whether recreation has been encouraged." *Jackson I*, 268 Kan. at 330. Here, the AHCC has been used on numerous occasions for recreational events and activities. The injury alleged here took place at such a recreational event. Thus, the district court correctly granted the AHCC's motion for summary judgment regarding the recreational use exception to tort liability under the KTCA.

We reverse the Court of Appeals and affirm the district court's grant of summary judgment in favor of the AHCC.

NUSS and JOHNSON, J.J., not participating.

LOCKETT, J., Retired, and LARSON, S.J., assigned.

LOCKETT, J., concurring.