No. 96,568

KEVIN D. POSTON, *Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 387, ALTOONA-MIDWAY, WILSON COUNTY, *Appellee.*

(189 P.3d 517)

Opinion filed August 1, 2008.

*Kala A. Spigarelli,* of the Spigarelli Law Firm, of Pittsburg, argued the cause, and *Brian P. Duncan,* of the same firm, was with her on the brief for appellant.

*Teresa L. Watson,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Larry G. Pepperdine,* of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case raises the question of whether the recreational use exception in the Kansas Tort Claims Act (KTCA), K.S.A. 2007 Supp. 75-6104(o), grants immunity to this public school district for alleged ordinary negligence that resulted in injury to Kevin D. Poston as he walked away from the doors of the school's gymnasium to exit the building via the school's commons while recreational activities were in progress in the gymnasium. We conclude the exception applies because the commons was connected to the gymnasium by plan and was an integral part of the recreational use of the gymnasium.

On January 6, 2003, Poston arrived at the Altoona, Kansas, middle school to pick up his stepson from basketball practice. The middle school is operated by Unified School District No. 387 (U.S.D. No. 387), Altoona-Midway, in Wilson County, Kansas. The

south doors of the school opened into the commons, and double doors led from one side of the commons to the gymnasium.

Poston entered the school's south doors and walked through the commons to one set of gymnasium doors. He let his stepson know he was there to pick him up and then turned to leave. As Poston was exiting the school through the south doors, one of the door brackets—a closing mechanism—came loose and fell on his head.

Poston filed a petition in which he claimed U.S.D. No. 387 was negligent for allowing the door hinge to become loose and failing to warn him of the danger. U.S.D. No. 387 responded by filing a motion for summary judgment, arguing that the school district was immune from liability under the recreational use exception to the KTCA. See K.S.A. 75-6101 *et seq.* U.S.D. No. 387 contended that Poston's injury resulted from the use of public property intended or permitted to be used as an "open area" for purposes of recreational use immunity.

Poston responded to the summary judgment motion by stressing the nonrecreational uses of the commons, specifically its daily use as a cafeteria and as a point of access to many areas of the school. He argued the commons was not planned for recreational use and was not a "necessary and integral part" of the gymnasium. Rather, he contended, the use of the commons for recreational purposes was merely incidental.

In its memorandum decision, the district court found that recreational use immunity, as codified at K.S.A. 2007 Supp. 75-6104(o), applied. Recognizing that Poston's injury occurred in the commons and not the gymnasium itself, the court found this of no great significance. Although the commons was not the exclusive means of access to the gymnasium, the court found the commons was a "transitional area" from outside the school into the gymnasium, as described in *Robison v. State,* 30 Kan. App. 2d 476, 43 P.3d 821 (2002). Thus, the court concluded the commons was "of such a nature or character as to make it an appendage to, and therefore a part of, the gymnasium which is a recognized recreational use area."

The district court further determined the commons was an "integral part" of the gymnasium, as described in *Wilson v. Kansas*

*State University*, 273 Kan. 584, 590, 44 P.3d 454 (2002). This finding was justified, according to the district court, because it was undisputed that the commons was used for a variety of purposes related to the gymnasium's recreational purposes, including selling concessions and tickets during school and nonschool sporting events. Finding no material factual issues in dispute, the district court granted U.S.D. No. 387's motion for summary judgment.

Because of its determination, the district court declined to address the secondary issue of whether the commons itself constituted a recreational use area for purposes of the KTCA immunity provision.

On direct appeal, the Court of Appeals panel affirmed the district court in a split decision. *Poston v. U.S.D. No. 387*, 37 Kan. App. 2d 694, 156 P.3d 685 (2007). Judge McAnany dissented, indicating the commons' "primary function" was to serve as the students' cafeteria and to provide access to other areas of the school. In contrast, "its recreational use is purely incidental." 37 Kan. App. 2d at 698. Additionally, Judge McAnany would not extend the gymnasium's status under the KTCA to the adjoining commons "simply because they are contiguous," noting conduct in a classroom would not be immunized simply because of its proximity to the gymnasium. 37 Kan. App. 2d at 698.

On review, Poston urges us to adopt the dissent's view. In arguing the district court erred in applying the recreational use exception to this case, he basically funnels his contentions into two arguments: (1) The commons was not an "integral part" of the gymnasium, and (2) recreation was not the intended use of the commons and any recreational use of the commons has been merely incidental. Poston asserts that, by affirming the district court, the Court of Appeals expanded K.S.A. 2007 Supp. 75-6104(o) beyond the application intended by the legislature.

U.S.D. No. 387 counters by arguing that because the commons sat appurtenant to the gymnasium, provided gymnasium access, and sometimes housed recreational activities such as snack concessions and wedding receptions, immunity should also extend to cover negligent acts taking place there.

## Standard of Review

The issue of whether the recreational use exception to the KTCA, K.S.A. 2007 Supp. 75-6104(o), renders U.S.D. No. 387 immune from liability involves a question of statutory interpretation subject to unlimited review. *Lane v. Atchison Heritage Conf. Center, Inc.*, 283 Kan. 439, 443, 153 P.3d 541 (2007); *Wilson,* 273 Kan. at 586-87. Our standards for statutory interpretation are well established:

" 'The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.' " *Wilson,* 273 Kan. at 588 (quoting *Robinett v. The Haskell Co.,* 270 Kan. 95, 100, 12 P.3d 411 [2000]).

## Recreational Use Exception

Under the KTCA, unless an exception applies, a governmental entity "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2007 Supp. 75-6103(a). In order to avoid liability, the governmental entity has the burden of proving that it falls within one of the enumerated exceptions found in K.S.A. 2007 Supp. 75-6104. See *Jackson v. U.S.D. 259,* 268 Kan. 319, 331, 995 P.2d 844 (2000) (*Jackson I*); Hesse and Burger, *Recreational Use Immunity: Play at Your Own Risk,* 77 J.K.B.A. 28 (February 2008); Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years,* 52 Kan. L. Rev. 939 (June 2004).

Among the exceptions to liability is the so-called recreational use exception, which this court has determined is to be broadly applied to accomplish the legislative purpose of the exception. *Lane,* 283 Kan. at 444; *Wilson,* 273 Kan. at 592. The policy underlying the exception and its purpose was explained in *Jackson I*:

"The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund

them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community." 268 Kan. at 331.

This legislative purpose, to be applied broadly here, governs our application of the exception. The statute provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 2007 Supp. 75-6104.

Thus, to establish that the exception applies, U.S.D. No. 387 must establish that (1) Poston claims ordinary negligence only; (2) Poston claims the negligence was the proximate cause of the alleged injuries; and (3) Poston's injuries resulted from the use of a qualifying property. The summary judgment motion and Poston's response accepted that there were allegations of ordinary negligence only and that the negligence was the proximate cause of Poston's alleged injuries. The only dispute was whether the commons was a qualifying property.

To be a qualifying property, the property must be (a) public and (b) intended or permitted to be used as a park, playground, or open area for recreational purposes. Here, the public nature of the property is not in issue. K.S.A. 2007 Supp. 75-6104, which contains the exceptions to liability, applies to governmental entities, and the KTCA is applicable to school districts and their employees. K.S.A. 2007 Supp. 75-6102(b),(c) and (d); *Jackson I*, 268 Kan. at 322-23.

The dispute relates to the second requirement, which incorporates three points for analysis: The property must be (1) intended or permitted to be used (2) as a park, playground, or open area (3) for recreational use. There would be no issue regarding these requirements if the injury had occurred in the gymnasium during the basketball practice. A school gymnasium has been held to be

qualified "public property" for the purposes of K.S.A. 2007 Supp. 75-6104(o), and its use for basketball practice was clearly a recreational use. See *Jackson I*, 268 Kan. at 323; *Jackson v. U.S.D. No. 259*, 29 Kan. App. 2d 826, 831, 31 P.3d 989 (2001) (*Jackson II*). This qualification of the gymnasium under the exception is relevant because the district court did not consider whether the commons standing alone met the criteria; rather, it considered whether the commons qualified as a necessary and integral part of the gymnasium.

Integral Part

In finding that the recreational use exception applies, the district court relied heavily on two Kansas cases, *Robison v. State*, 30 Kan. App. 2d 476, and *Wilson v. Kansas State University*, 273 Kan. 584.

In *Robison*, the plaintiff was injured when he slipped and fell in a wet hallway between a swimming pool and a locker room. First, the Court of Appeals panel determined that the swimming pool qualified as property covered by the recreational use exception. 30 Kan. App. 2d at 478. The panel then turned to Robison's argument that the defendants were liable for his injury because it occurred in the hallway, rather than the swimming pool, and that the hallway was not "intended or permitted to be used for recreational purposes." 30 Kan. App. 2d at 479. The panel rejected the argument, citing *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 97, 785 P.2d 986 (1990).

In *Nichols*, as the plaintiff was leaving football practice, he was injured crossing a "grassy swale or waterway" between the football field and the locker room. Suing for damages, the plaintiff argued the coach was negligent in ordering the players to cross the area in the dark and in failing to provide proper supervision. The plaintiff argued the immunity provision did not apply when liability was premised on the coach's actions rather than the property's condition. This court rejected the argument by holding the KTCA recreational use exception applied when injuries resulted from the use of public property intended or permitted to be used for recreation, regardless of whether the activity was sponsored or supervised by public officials.

The issue addressed in *Nichols* did not focus the court's analysis on whether immunity applied when the injury occurred *between* the football field and locker room rather than *on* the football field. Nevertheless, subsequent cases have interpreted the case to mean "[s]chool districts are not liable for injuries which are the result of ordinary negligence and which occur on *or near* a football playing field." (Emphasis added.) *Jackson I*, 268 Kan. at 324.

This reading of *Nichols* was reaffirmed in the subsequent decision of *Wilson v. Kansas State University*, 273 Kan. at 591. In *Wilson*, this court determined the university was immune from tort liability arising when a patron of the football stadium was injured while using a stadium restroom. The court reasoned: "While the restrooms independently have a nonrecreational usage, they serve no purpose but for the recreational nature of the football stadium, which attracts large numbers of people." 273 Kan. at 588.

Further, *Wilson* explained that "the restrooms are 'an integral part of a football stadium' " because the restrooms allowed people to continue enjoying the recreational purposes provided by the football games at the stadium without leaving. 273 Kan. at 589. The court went on: "Likewise, the usefulness of the park is increased and the legislative purpose is advanced." 273 Kan. at 589. In addition, to the extent the legislature intended to encourage the building of recreational facilities, extending immunity to cover negligent acts in restrooms is consistent with the legislative intent because "such extension further increases the incentive to build recreational facilities." 273 Kan. at 589. Finally, the *Wilson* court stressed: "[T]he restrooms are not 'incidentally' connected to the stadium but rather necessarily connected to the stadium by plan." 273 Kan. at 590. As a result, the restrooms were deemed to fall within the recreational use exception.

Applying *Wilson* to the facts of this case leads to the same conclusion. Although the commons was not used exclusively for recreational use, it was an integral part of the use of the gymnasium. Like the restrooms, the use of the commons to serve concessions allowed patrons to enjoy the recreational events conducted in the gymnasium. Additionally, ticket sales were integral to the public being invited into the gymnasium for many of the events. Moreo-

ver, the commons was not incidentally connected to the gymnasium but was necessarily connected by plan as a principal means for the public to gain physical access to the gym, to purchase a ticket to gain entry, and to purchase concessions for enjoyment during the event. Indeed, Poston's use of the commons at the time of his injury resulted from a use that was consistent with the plan; he walked to and from the gymnasium during the basketball practice by using a route of access intended for public use. Also, extending immunity is consistent with the legislative intent underlying the exceptions. A school would be discouraged from opening a gymnasium for recreational use if liability attached to injuries incurred in an area that is an integral part of the gymnasium's recreational use.

Poston attempts to distinguish *Wilson* by pointing out that the restrooms in that case were located *inside* the football stadium. Here, the commons was located *outside* the gymnasium, although it was located *inside* the school, directly adjacent to the gymnasium, and provided direct access to it. Although the factual distinction is accurate, its legal importance is undercut by language in *Wilson*. Rather than state a requirement that the restrooms be located within the football stadium itself in order to qualify as recreational use property, the *Wilson* court quoted the *Jackson I* court's description of *Nichols* as extending immunity when injuries "occur on *or near* a football playing field. [*Jackson I*,] 268 Kan. at 324." *Wilson*, 273 Kan. at 591. The *Wilson* court then noted: "Arguably, no recreation takes place near a football field, yet the property is collectively intended for recreational purposes." 273 Kan. at 591. Here, the commons and gymnasium were collectively intended for and served a recreational purpose.

Incidental Recreational Use

Poston also argues that Wilson is distinguishable because the Kansas State University football stadium and its restrooms were intended solely for recreational use. In contrast, the primary purpose of the commons was for student dining and providing access to various areas of the school. Any recreational use, according to Poston, was merely incidental.

This argument was the focus of Judge McAnany's dissent, in which *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 32 P.3d 1156 (2001), was cited for support. *Barrett* addressed the constitutionality of the recreational use exception. In doing so, the *Barrett* court talked about the purpose behind K.S.A. 75-6104(o) and the distinction between a gymnasium and a classroom:

"It is true that a student in a gym is arguably similarly situated as one in a classroom. However, distinguishing between a student injured in the gym and one who is injured in the classroom is rationally related to the purpose of the statute. The school district needs little incentive to create classrooms; however, the same cannot be said of recreational facilities such as gyms and football fields. While these facilities undoubtedly enhance the educational process, they also provide value to the public as places for recreational activities. The statute encourages their development by a grant of limited governmental immunity." 272 Kan. at 260.

Then, *Barrett* distinguished between an injury occurring in a recreational area versus a classroom or a parking lot:

"In a similar manner, distinguishing between a student injured by a rocket demonstration on the football field as opposed to a parking lot is rationally related to the statute in that schools on their own may develop parking lots without a statutory incentive, while they may not do so with regard to recreational facilities. The recreational facility is different from either a classroom or a parking lot in this regard, because its value to the public and to the students is different, and the potential for injury in its use, whether by student or the public and, therefore, for financially draining lawsuits, is greater. Absent a limited grant of immunity for negligence, a school district may decide not to provide recreational facilities, although it would still provide classrooms and parking lots absent such a grant." 272 Kan. at 260-61.

Judge McAnany opined that an injury in the "school lunch room" should be treated no differently from an injury in a school classroom. 37 Kan. App. 2d at 699. The problem with this reasoning, however, is that the commons in this case was used as a multipurpose room, not simply a cafeteria, and some uses were an integral part of the recreational purpose of the gymnasium. The incentive to open to the gymnasium to the public for recreational use necessitates opening those areas integral to the gymnasium's use; in this case that included the commons.

This necessity was recognized in this court's recent decision in *Lane*, 283 Kan. 439, which focused upon an incidental use argument. There, the plaintiff was injured when he slipped and fell on ice at the loading dock of the Atchison Heritage Conference Center (AHCC). The AHCC hosted a New Years' Eve dance, which was open to the public, and hired a musical group, led and managed by Lane, to provide the music. Lane used the dock to load band equipment into his van.

When Lane brought a negligence suit against the AHCC, the district court granted summary judgment on the basis that the AHCC was immune from liability under the recreational use exception. The Court of Appeals reversed, concluding that the exception did not apply where the facility's recreational use was only incidental to its primary function—"to provide a source of economic development for the community of Atchison." *Lane v. Atchison Heritage Conf. Center, Inc.*, 35 Kan. App. 2d 838, 847, 134 P.3d 683 (2006). Because the AHCC's "primary function" was not recreational, the Court of Appeals held that the AHCC did not meet its burden of establishing immunity from the KTCA. According to the Court of Appeals, "[t]he use of the facilities by artistic workshops, parties, or other activities reasonably classified as 'recreational' seems entirely a matter of happenstance." 35 Kan. App. 2d at 847-48.

To support its reasoning, the Court of Appeals relied on language from *Jackson I*, where this court adopted the holding in *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996), that a recreational use must be " 'more than incidental' " in order for the exception in K.S.A. 2007 Supp. 75-6104(o) to apply. *Lane*, 35 Kan. App. 2d at 846 (quoting *Jackson I*, 268 Kan. at 330).

In *Lane*, on petition for review, this court disagreed with the Court of Appeals decision to give such weight to the property's primary function, stating that the "language in *Jackson I* that the use must be 'more than incidental' does not equate with the language adopted by the Court of Appeals that the use must be *the primary purpose* in maintaining a facility." *Lane*, 283 Kan. at 447 (citing 35 Kan. App. 2d at 847.) Instead, by taking a "primary pur-

pose" approach, the Court of Appeals ignored the language of K.S.A. 2007 Supp. 75-6104(o), which provides that the recreational use exception applies when property "is intended or permitted" to be used for recreational purposes. *Lane* reiterated that "the correct test to be applied under this statute is 'whether the property has been used for recreational purposes in the past or whether recreation has been encouraged.' " *Lane*, 283 Kan. at 447 (quoting *Jackson I*, 268 Kan. at 330).

Further, *Lane* observed that a facility must be viewed "collectively" to determine whether it is used for recreational purposes and pointed out that the restrooms in *Wilson* were immune from liability because they were "necessarily connected" to property that had a recreational use. 283 Kan. at 446 (citing *Wilson*, 273 Kan. at 590); see also *Nichols*, 246 Kan. at 94 (recreational use exception applied to "grassy swale or waterway" near public school's football field). Additionally, the *Lane* court cited other cases applying the recreational use exception even where recreation was not the primary purpose of the facility. 283 Kan. at 448-49 (discussing *Jackson I* and determinations made on remand regarding the recreational uses of school gymnasium in *Jackson II*, 29 Kan. App. 2d at 831-32).

In this case, while the commons' primary use may have been nonrecreational, during recreational use of the gymnasium the commons has a recreational use integrally tied to the gymnasium— to provide refreshments and tickets to the patrons at the sporting events in the gymnasium. See *Jackson I*, 268 Kan. at 330 (adopting a definition of recreation as a refreshment of strength after toil, diversion, or play). The use is undisputed. And, although the commons provided access to several different educational areas of the school, it provided the public with access to the gymnasium. As such, the commons was connected to the gymnasium by plan and was an integral part of the recreational use of the gymnasium and its recreational use was more than incidental. Therefore, U.S.D. No. 387 is immune from liability under the recreational use exception of K.S.A. 2007 Supp. 75-6104(o) for Poston's injury that occurred in the middle school's commons while recreational activities were in progress in the gymnasium.

The Court of Appeals decision affirming the district court's grant of summary judgment in favor of U.S.D. No. 387 is affirmed. The district court is affirmed.

NUSS, J., not participating.

LEBEN, J., assigned.▮

JOHNSON, J., dissenting: I respectfully dissent. I acknowledge that *Jackson v. U.S.D. 259*, 268 Kan. 319, 995 P.2d 844 (2000) (*Jackson I*), established the precedent that the recreational use immunity of K.S.A. 2007 Supp. 75-6104(o) applies to an indoor gymnasium. Here, the well-written majority opinion makes a persuasive argument for applying our prior cases to extend *Jackson I* to include within the immunity the commons area which was designed to provide access to and support activities for the gymnasium. However, I view the holdings in *Jackson I* to be suspect and, although I feel constrained to follow precedent, I do not feel compelled to expand its reach.

First, I am perplexed by the declaration that we are to broadly apply the immunity provisions of K.S.A. 2007 Supp. 75-6104(o) to accomplish the legislative purpose for the exception. Even *Jackson I* acknowledged that our open-ended Kansas Tort Claims Act established the general rule that "governmental liability is the rule and immunity is the exception." *Jackson I*, 268 Kan. at 322. Liberally construing an exception so as to diminish the efficacy of the general rule turns the statutory scheme on its head. Moreover, I am unable to divine a legislative intent to single out subsection (o) from among the two dozen exceptions listed in K.S.A. 2007 Supp. 75-6104 to be the one exception to receive special, broadly applicable treatment.

Perhaps more to the point, nothing in the legislative history of K.S.A. 2007 Supp. 75-6104(o) gives us any clue as to the intended purpose for which the exception was enacted. Curiously, *Jackson*

*I* makes that point quite clearly. The opinion notes that the Kansas Tort Claims Act (KTCA) was introduced in the Senate on January 11, 1979, as S.B. 76 and later replaced with a substitute bill, neither of which contained a recreational use immunity provision. 268 Kan. at 326. Continuing, the opinion describes how the substitute bill was subjected to "a significant amount of debate" in the Senate before being passed and sent to the House Judiciary Committee, where the bill was extensively debated and was amended to add a number of exceptions, albeit none of the additions was a recreational use exception. 268 Kan. at 326-27. Then, "[o]n April 2, 1979, Representative Stites made a motion before the House to add the 'recreational use' exception now found at K.S.A. 75-6104(o). *There are no committee notes discussing the 'recreational use' exception.*" (Emphasis added.) 268 Kan. at 327. The opinion then relates that the House passed the amended substitute bill the same day, April 2, and the Senate concurred the following day.

In other words, the recreational use exception was apparently a last minute addition to the KTCA, without much, if any, discussion as to its purpose or scope. From that history, I am unable to intuit the public benefits rationale that the majority cites from *Jackson I* as justifying extraordinary treatment, *i.e.*, broadly or liberally interpreting the exception to the detriment of the general rule.

On a more basic level, I take issue with *Jackson I*'s interpretation of the language utilized by the legislature in K.S.A. 2007 Supp. 75-6104(o). As the majority in this case correctly recites, our most fundamental, overarching rule of statutory interpretation is to give effect to the plain language of a statute, rather than to make our own determination of what we believe the law should or should not be. See *Wilson v. Kansas State University*, 273 Kan. 584, 588, 44 P.3d 454 (2002). In my view, the *Jackson I* application of the recreational use exception to an indoor gymnasium represented the court's view of what the law should be, in contravention of the plain statutory language.

To review, K.S.A. 2007 Supp. 75-6104(o) immunizes a governmental entity from "any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes." In *Jackson I*,

the plaintiffs argued that the indoor gymnasium involved in that case was "not a 'park' or a 'playground' or an 'open area.'" 268 Kan. at 323. The *Jackson I* court answered that argument by first describing prior recreational use immunity cases which had involved outdoor facilities, and then stating, as its complete analysis of the question:

"It defies common sense to hold that K.S.A. 75-6104(o) provides immunity from injuries which occur on a football field, a baseball field, a track and field area, and a sledding area, but not on an indoor basketball court solely because it is indoors." 268 Kan. at 325.

To the contrary, there are common-sense reasons why the legislature might distinguish between outdoor and indoor facilities. In my common experience, parks, playgrounds, and open areas, such as ballfields and sledding areas, are much more accessible to the public for unsupervised use than indoor facilities within a structure which can be locked or which are normally supervised while open.

More to the point, our rules of statutory construction instruct us not to eliminate ordinary words with ordinary meanings which are readily found in the statute. See *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006). K.S.A. 2007 Supp. 75-6104(o) refers to public property "used as a park, playground or open area for recreational purposes." The common meaning of "open area" would not include a facility fully enclosed inside four walls and a roof. If there is any doubt about that, one could apply the maxims *noscitur a sociis* (it is known from its associates) or *ejusdem generis* (of the same kind) to interpret open areas to be akin to or the same kind of place as a park or playground. In effect, *Jackson I*'s interpretation of the exception effectively removed the words "as a park, playground or open area" from the statute, to read the immunity as applying to "public property used . . . . for recreational purposes."

Interestingly, *Jackson I* found Illinois law to be persuasive on the question of whether the property involved was intended or permitted to be used for recreational purposes. In doing so, the opinion acknowledged that the Illinois statute establishing recreational use immunity specifically added the language, " 'buildings

or other enclosed recreational facilities' " after its listing of " 'parks, playgrounds, open areas.' " 268 Kan. at 328. Obviously, the Illinois Legislature did not consider an indoor facility to be encompassed by the previous terms, " 'parks, playgrounds, open areas.' " Yet, *Jackson I* does not discuss this critical distinction in statutory language or the logical implication of our legislature having omitted "buildings or other enclosed recreational facilities" from K.S.A. 2007 Supp. 75-6104(o).

In my view, *Jackson I*'s summary holding that an indoor gymnasium was intended to be included under the recreational use exception of K.S.A. 2007 Supp. 75-6104(o) was not supported by any rule of statutory construction. Rather, the holding violated our clear rule precluding a court from determining what the law should be in lieu of determining what the law actually says. The legislature need not assuage our appetite for common sense, so long as it plainly and unambiguously states its intent with ordinary words employed with their ordinary meanings.

Nevertheless, I appreciate the concept of stare decisis as a stabilizing force in the law and do not propose here and now that the holding in *Jackson I* be overruled. However, it has been noted that " 'pillars of the law, like pillars in a building, must be repaired or replaced from time to time to prevent the whole structure from collapsing.' " *Flagg v. Loy*, 241 Kan. 216, 221, 734 P.2d 1183 (1987) (quoting *Guffy v. Guffy*, 230 Kan. 89, 105, 631 P.2d 646 [1981]) (Prager, J., dissenting); see also *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 787-88, 189 P.3d 508 (2008), (discussing stare decisis). Given that the *Jackson I* "building" was supported by a pillar of sand, I would not attach another room to that building by expanding its holding to an adjacent commons area.