NOT DESIGNATED FOR PUBLICATION

No. 114,571

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JONNI CULLISON, *et al.*,
*Appellants*,

v.

CITY OF SALINA, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; WILLIAM B. ELLIOTT, judge. Opinion filed May 27, 2016.
Reversed and remanded with directions.

*Michael C. Rader* and *Michelle L. Marvel*, of Bartimus, Frickleton and Robertson, P.C., of
Leawood, for appellants.

*James P. Nordstrom* and *Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, L.L.P., of
Topeka, for appellee.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

*Per Curiam*: This is a tort action arising out of the death of 12-year-old Jayden
Hicks, who suffered catastrophic injuries when she slipped and fell on an electrical
junction box on a main street in Salina. Wires in the box had shorted out, and the absence
of a ground wire caused the metal housing to become electrified. The Saline County
District Court granted summary judgment to Defendant City of Salina based on the
recreational use exception to the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*,
because the junction box is located at the mouth of a small downtown park and provides

1

electricity for lights in the park and along the street. We find disputed issues of material fact as to the applicability of the exception and, therefore, reverse and remand for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Given the narrowness of the issue on appeal, we may briefly state the pertinent facts. We do so favorably to Plaintiffs Jonni Cullison and Jaymie Hicks, Jayden's parents, who have sued on behalf of their daughter's estate and her heirs. Looking at the evidentiary record that way conforms to our standard of review for summary judgments. *See Bouton v. Byers*, 50 Kan. App. 2d 35, 36-37, 321 P.3d 780 (2014).

During the early evening of May 29, 2013, Jayden was playing with her two siblings and two of their friends in and around Campbell Plaza in downtown Salina. Campbell Plaza is described as a "pocket park" adjacent to Santa Fe Avenue and includes a stage and an open area for people to mingle. Jayden apparently slipped in a puddle that had formed after a rainstorm. She fell on a junction box that is flush with the sidewalk at an entrance to Campbell Plaza. The metal cover of the junction box had become electrically charged with a high voltage. Jayden's body absorbed the charge, and several people trying to rescue the child were severely jolted when they touched her. Firefighters called to the scene were able to pry Jayden from the junction box. Although Jayden then received immediate medical care, her injuries were fatal. She died on December 31, 2013.

The junction box had been installed in the 1980s by a company the City hired to do electrical work in the downtown area. The record evidence indicates the City did not inspect the wiring inside the box then and had not done so until just after Jayden was hurt. An inspection at that time showed that two live wires within the box had come into contact with each other, causing the electrical current to flow into the metal housing of

the box. The inspection also revealed no ground wire had been installed. The evidence on summary judgment indicates that use of a ground wire would have conformed to accepted standards for electrical work at the time the junction box was placed and that had a ground wire been included, the charge created when the live wires came into contact would have tripped a breaker cutting off power to the junction box.

The junction box is located on a strip of concrete forming part of the sidewalk on Santa Fe. The concrete strip runs along the entrance to Campbell Plaza and the storefronts on Santa Fe. Closer to the street, the sidewalk consists of decorative bricks. Campbell Plaza also appears to be surfaced with the same type of decorative brick. A photograph showing the junction box, the entrance to Campbell Plaza, and the sidewalk and storefronts on Santa Fe was submitted to the district court as part of the evidentiary record on summary judgment. The junction box provides electricity for decorative lights in the Plaza and along Santa Fe. One or more electrical outlets on a concrete planter and bench framing part of Campbell Plaza are powered through the junction box.

Plaintiffs filed their tort action on February 19, 2014, and they amended the petition twice. They sued the City of Salina, the manufacturer of the junction box, and the company that installed it. Plaintiffs and the private defendants reached a confidential out-of-court disposition, so those companies have been dismissed from the case. The City has asserted various grounds that would limit or defeat liability, including the recreational use immunity under the KTCA, K.S.A. 75-6104(o). Following extensive discovery, Plaintiffs filed a motion and supporting memorandum for partial summary judgment asking the district court to find the City was not entitled to recreational use immunity as a matter of law. The City filed a memorandum in opposition and a cross-motion requesting that it be granted immunity as a matter of law. The district court later issued a written decision granting the City's cross-motion and entering judgment in its favor. Plaintiffs have timely appealed the judgment in favor of the City.

3

*Standard of Review on Summary Judgment*

A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in its favor as a matter of law. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009); *Korytkowski v. City of Ottawa*, 283 Kan. 122, Syl. ¶ 1, 152 P.3d 53 (2007). In essence, the movant argues there is nothing for a jury or a trial judge sitting as factfinder to decide that would make any difference. The party opposing summary judgment must then point to evidence calling into question a material factual representation made in support of the motion. *Shamberg*, 289 Kan. at 900; *Korytkowski*, 283 Kan. 122, Syl. ¶ 1. If the opposing party does so, the motion should be denied so a factfinder may resolve that dispute. In addressing a request for summary judgment, the district court must view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Shamberg*, 289 Kan. at 900; *Korytkowski*, 283 Kan. 122, Syl. ¶ 1. An appellate court applies the same standards in reviewing the entry of a summary judgment. The Kansas Supreme Court has reiterated those principles in *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1204, 308 P.3d 1238 (2013).

Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the trial court's decision to grant the motion and review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009); *Golden v. Den-Mat Corporation.*, 47 Kan. App. 2d 450, 460, 276 P.3d 773 (2012). Likewise, merely because each party in a case has filed a motion for summary judgment, the district court has no broader authority to grant one of the motions. Each motion must

be separately and independently reviewed using the standards we have outlined. *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 790-91, 109 P.3d 1255 (2005); *Jones v. Noblit*, No. 100,924, 2011 WL 4716337, at *1 (Kan. App. 2011) (unpublished opinion). In short, the filing of cross-motions does not afford the district court a license to decide a case on summary judgment.

At trial, a government entity asserting immunity under one of the KTCA exceptions has to prove its entitlement to that protection. *Soto v. City of Bonner Springs*, 291 Kan. 73, 78, 238 P.3d 278 (2010); *Jackson v. U.S.D. 259*, 268 Kan. 319, Syl. ¶ 3, 995 P.2d 844 (2000). A party seeking summary judgment on an issue on which it bears the burden of proof must present uncontroverted facts establishing its right to a judgment as a matter of law. *Golden*, 47 Kan. App. 2d at 497 (A party asserting an affirmative defense "has an obligation to come forward with evidence on summary judgment that would allow a jury to find those facts necessary to show" the defense applies.); *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (if defendant bears ultimate burden of persuasion on issue, defendant must come forward with facts on summary judgment that would allow a jury finding in its favor). The moving party, then, must do more than argue the opposing party cannot disprove the issue. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (explaining difference in required showing  for summary judgment depending on whether moving party bears burden of proof at trial).

*KTCA Legal Principles*

As we have indicated, what's before us turns on the proper interpretation and application of the recreational use exception to governmental liability under the KTCA. The exception provides:

5

"A government entity. . . shall not be liable for damages resulting from:

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 75-6104(o).

Before discussing the district court's ruling in this case, we mention several legal principles guiding judicial consideration of the KTCA.

Under the KTCA, municipal liability is the rule and immunity the exception. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 233, 262 P.3d 336 (2011); *Soto*, 291 Kan. at 78; see K.S.A. 75-6103. As a general proposition, the KTCA exceptions are to be narrowly construed, since they curtail the rule of liability. *Keiswetter v. State*, No. 110,610, 2016 WL 1612922, at *6-7 (Kan. 2016); *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 290, 261 P.3d 943 (2011). An accepted tenet of statutory construction calls for the narrow application of exceptions. See *Telegram Publishing Co. v. Kansas Dept. of Transportation*, 275 Kan. 779, 785, 69 P.3d 578 (2003); *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. 40, 44, 397 P.2d 360 (1964). But the recreational use exception to the KTCA has been afforded a broad reading for reasons that seem mysterious. See *Poston v. U.S.D. No. 387*, 286 Kan. 809, 812-13, 189 P.3d 517 (2008) (recognizing recreational use exception "to be broadly applied" in reliance on *Jackson*, 268 Kan. at 331); 286 Kan. at 820-21 (Johnson, J., dissenting) (noting lack of statutory basis and legislative history supporting broad construction of exception); *Jackson*, 268 Kan. at 331 (exception given generous reading because doing so encourages government entities to develop parks and other recreational areas resulting in public benefit). The *Jackson* court, perhaps in light of that approach, recognized the recreational use exception to be highly fact specific and held its application should be determined on a case-by-case basis. 268 Kan. 319, Syl. ¶ 7.

6

The Kansas Supreme Court has extended coverage under K.S.A. 75-6104(o) to places outside a park or other recreational area if they are "integral" to its use. *Poston*, 286 Kan. at 817. The court indicated, however, an outside place merely "incidental" to a park's function will not enjoy recreational use immunity. 286 Kan. at 818-19; see *Wilson v. Kansas State University*, 273 Kan. 584, 590, 44 P.3d 454 (2002) (court draws distinction between incidental and integral purposes to find restrooms at football stadium subject to recreational use immunity); *Jackson*, 268 Kan. at 330 (quoting with favor *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 243-44, 666 N.E.2d 687 [1996] to effect that comparable Illinois statute applicable only if "'the recreational use was more than incidental'"). Just how the integral-incidental determination is to be made or applied isn't entirely clear. If the classification is binary, then a given outside place must be either incidental or integral to an associated recreational area. There is no middle ground. If, however, a place may fall somewhere in between, the applicability of the recreational use immunity appears unsettled. Is more than incidental use enough for immunity to attach to the place? Or must the use reach or exceed integral to warrant immunizing the place?

On appeal, Plaintiffs submit there are disputed facts as to whether the junction box is within Campbell Plaza and, thus, subject to the recreational use exception. They also say there are disputed facts indicating that if the junction box is outside the park, it should not be considered integral to the use of the park, so no immunity applies. Finally, they say there are disputed facts that would support a finding that the City acted with gross and wanton negligence in failing to retrofit the junction box with a ground wire, thereby nullifying any available immunity.

*Location of Junction Box*

At least on summary judgment, the parties do not dispute that Campbell Plaza is a park covered by the recreational use exception to the KTCA. The location of the junction box is a known and undisputed fact. But that is not necessarily determinative of the applicability of the recreational use exception because the borders of Campbell Plaza are not clear as a matter of law from this record. *Cf. Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (summary judgment may be inappropriate when parties agree on facts but dispute inferences to be drawn). As we have indicated, the junction box is at the mouth of an entrance to Campbell Plaza but in an area that corresponds to part of the sidewalk that extends down Santa Fe in front of the stores. Campbell Plaza has no gate or fence clearly separating it from the street. Nor is there even a sign at the entrance that at least arguably might indicate where the park begins. The City, of course, owns both Campbell Plaza and the sidewalk. We, therefore, suppose there are no deeds or formal surveys establishing a genuine property line between the two, as there would be for parcels with different owners. The summary judgment record contains no documents of that type.

In its ruling, the district court described the junction box as "located in an indistinct divide between Campbell Plaza and the adjoining South Santa Fe sidewalk." The district court's characterization fosters an impression that there is some sort of area between the sidewalk on Santa Fe and Campbell Plaza. At the very least, that appears to be an inference rather than an unequivocal fact. And it is an impermissible summary judgment inference playing to the City's advantage and Plaintiffs' detriment. We think it considerably more precise to say, based on the summary judgment record, that the divide between Campbell Plaza and the Santa Fe sidewalk is indistinct. The sidewalk abuts Campbell Plaza—what's unclear is where one ends and the other begins.

8

Those circumstances add up to ambiguities that on summary judgment preclude a finding as a matter of law that the junction box is within Campbell Plaza and subject to recreational use immunity for that reason. Such a conclusion would require drawing inferences adverse to Plaintiffs, contrary to the rules governing the disposition of summary judgment motions. Moreover, since the City would have to prove its entitlement to recreational use immunity at trial, it has to present undisputed facts on summary judgment establishing that entitlement as a matter of law.

On summary judgment, the City submitted evidence that it *treated* the junction box and the concrete strip as part of Campbell Plaza. For example, work crews from the parks department apparently performed routine maintenance on Campbell Plaza and its entrances. But some intragovernmental labeling of a place can't change its physical character or actual use. Otherwise, a municipality could immunize its city hall under the recreational use exception by calling it a park and having employees of the parks department mow the lawn. That would be an ineffective legal fiction.

*Incidental or Integral*

As the Kansas Supreme Court has held, however, a place integral to a park or other recreational area may be covered under K.S.A. 75-6104(o) even though it is physically outside that area. In arguing for that protection, the City emphasized the junction box carries electrical current used for lighting in Campbell Plaza and on the street. The City has described the lighting in Campbell Plaza as "decorative," a description we accept for purposes of summary judgment. The City also mentioned, more or less in passing, electrical outlets on a concrete bench or planter at the edge of the park. In its decision granting summary judgment, the district court pointed to both the lights and the outlets in explaining why recreational use immunity applies as a matter of law.

9

The evidence fails to establish the City's entitlement to judgment as a matter of law on the theory the junction box was essential to the use of Campbell Plaza as a recreational area. First, decorative lights are, by definition, just that—decoration. By common meaning, a "decorative" object is "purely ornamental," Merriam-Webster's Collegiate Dictionary 324 (11th ed. 2003), or serves to "embellish," The American Heritage Dictionary of the English Language 472 (5th ed. 2011). We doubt something ornamental and only ornamental could be integral to the functionality of a park or any other place. Even if the City's decorative lights are more than just pretty, it doesn't follow that they must be "integral" to Campbell Plaza. Obviously, the area can be used during daylight and twilight hours without the lights. The record likewise fails to show as a matter of law that Campbell Plaza would be unusable after dark without those lights or that the street lights along Santa Fe would provide inadequate illumination. Again, on summary judgment, the City is obligated to present undisputed facts establishing its claim for recreational use immunity on this basis. The evidentiary record, however, falls short.

We don't see the electrical outlets on the outskirts of Campbell Plaza as adding much to the City's position. They could be used for all sorts of things from recharging cell phones to plugging in devices for playing recorded music or recording music being played. Most of those kinds of devices, however, also operate with batteries. The outlets may be a convenience for visitors to Campbell Plaza and the Salina downtown generally, but we cannot say as a matter of law they are integral to either. The district court could not have granted judgment to the City because the junction box, though outside Campbell Plaza, was integral to the Plaza's use. The issue must be left for a full airing of the evidence at trial.

*Gross and Wanton Negligence*

Even if we were mistaken on those points, the City would not be entitled to summary judgment if reasonable jurors could find Jayden Hicks' death resulted from

10

gross and wanton negligence attributable to the City. As we have outlined, a municipality's gross and wanton negligence negates the recreational use immunity extended in K.S.A. 75-6104(o). That heightened culpability takes away the protection afforded by the exception, restoring the KTCA's general rule of governmental liability. At trial, Plaintiffs would bear the burden of proving gross and wanton negligence. But they may defeat the City's motion for summary judgment by pointing to facts, disputed or otherwise, that would support a jury finding in their favor on the issue. They need not show such a finding to be likely—only that it would be permissible in light of the evidence. *Estate of Belden*, 46 Kan. App. 2d at 276 (In reviewing summary judgment granted a defendant, the appellate court asks whether "a reasonable jury *might* render a verdict for" plaintiff and "do[es] not consider the probability of such a verdict, only its possibility.").

Typically, whether a party has been negligent, even grossly and wantonly so, presents a question of fact for the jurors. *Vaughn v. Murray*, 214 Kan. 456, 459, 521 P.2d 262 (1974); *Gruhin v. City of Overland Park*, 17 Kan. App. 2d 388, Syl. ¶ 3, 836 P.2d 1222 (1992). A court should presume to decide the issue as a matter of law only in the absence of any evidence favoring the negligence claim. *Vaughn*, 214 Kan. at 459 (gross negligence); *Estate of Belden*, 46 Kan. App. 2d at 276 (determination of negligence generally should be for jurors).

Gross and wanton negligence requires more than the mere carelessness or inadvertence of ordinary negligence but does not entail a willful intent to injure. See *Soto*, 291 Kan. at 82. There must be "'a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences[.]'" 291 Kan. at 82 (quoting *Saunders v. Shaver*, 190 Kan. 699, 701, 378 P.2d 70 [1963]); see *Reeves v. Carlson*, 266 Kan. 310, 313-14, 969 P.2d 252 (1998). Culpability depends upon action or inaction "'indicating indifference to known circumstances.'" *Adamson v. Bicknell*, 295 Kan. 879, 890, 287 P.3d 274 (2012) (quoting *Elliott v. Peters*, 163 Kan.

11

631, 634, 185 P.2d 139 [1947]); *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986) (failure to act may constitute gross and wanton negligence).

Plaintiffs highlight two strands of evidence in support of their position that the record permits a reasoned conclusion favoring gross and wanton negligence. First, they offer internal municipal reports from 2007, 2009, and 2011 laying out the declining condition of the City's electrical wiring in downtown Salina and the need for repair. The most recent report described the wiring as poor and noted problems with the decorative lighting working only intermittently. As the City points out, however, none of the reports suggested the deteriorating wiring posed a safety risk.

Based on the summary judgment record, however, the reports would permit a reasonable inference that wires associated with the decorative lighting, including those in the junction boxes, might be prone to coming loose. An errant wire electrified the junction box that Jayden Hicks fell on.

The second strand of evidence comes from Steven Adams, who was the City's master electrician leading up to and at the time of Jayden Hicks' fatal injury. Adams went to Campbell Plaza to inspect the junction box shortly after Jayden Hicks had been taken to the hospital. A police officer overheard Adams telling a firefighter that he knew there was no ground wire in the junction box because if there had been, it would have tripped the breaker every time there was a power surge. During his deposition, Adams testified that he told the firefighter if the junction box had been properly grounded, the breaker would have tripped. Asked about what the police officer recounted, Adams testified he did not recall whether he had said something to that effect. But he disclaimed any knowledge of the municipal reports on the downtown electrical system. Adams agreed that had the junction box been properly grounded, it should not have become electrified. According to Adams, a ground wire would have tripped the breaker, cutting off power to the junction box.

12

From the police officer's account, jurors could infer that the City, through its trained employees, knew the junction box had no ground wire before Jayden Hicks was electrocuted. Nobody from the City had looked inside the junction box before then. So no one had direct knowledge that a ground wire had not been included when the junction box had been installed. But Adams, who was familiar with electrical circuitry, had already deduced the absence of a ground wire because the junction box had never tripped the breaker—something he would have expected to happen periodically had the box been grounded. A conclusion inferred from telling circumstances is no less knowledge than a conclusion based on direct visual observation. See *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015) ("[T]here is no distinction between direct and circumstantial evidence in terms of probative value.").

Despite his knowledge that the junction box lacked a functional ground, Adams took no action. Jurors could find he, thus, knew or based on his training had reason to know that the junction box could become electrified if the wires dislodged, causing a short circuit. And jurors could find he also understood an electrified junction box posed a substantial danger capable of causing severe or lethal injuries. Those circumstances could support a finding of gross and wanton negligence in failing to take corrective action by retrofitting the junction box with a ground wire. See *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244-45 (10th Cir. 2009) (applying Kansas law and recognizing conduct of defendant may support gross and wanton negligence if circumstances show disregard of "'high and excessive degree of danger . . . apparent to a reasonable person' in the defendant's position") (quoting *Lanning v. Anderson*, 22 Kan. App. 2d 474, 921 P.2d 813, *rev. denied* 260 Kan. 994 [1996]); *Deaver v. Board of Lyon County Commissioners*, No. 110,547, 2015 WL 715909, at *9 (Kan. App.) (unpublished opinion) *rev. denied* 302 Kan. ___ (Sept. 14, 2015). Whether the circumstances depicted in the summary judgment record portray a sufficiently imminent danger amounts to an unresolved question of fact. To turn back a motion for summary judgment, Plaintiffs did not have to show Adams or

13

some other City employee knew the housing of the junction box had actually become electrified. The district court mistakenly confined the dangerous condition to the actual electrification of the housing and failed to consider the absence of a ground wire as a sufficiently dangerous condition.

The district court, therefore, erred in granting summary judgment in favor of the City, effectively finding no gross and wanton negligence as a matter of law. We, of course, say simply that the threads woven in the summary judgment record do not warrant that conclusion. The threads need not be particularly long or strong to do so. Whether they would be sufficiently durable to withstand a full trial is another matter—one on which we express no opinion.

In coming to our conclusion, we have relied only on what we have identified as Plaintiffs' second strand of evidence resting on Adams' knowledge. Our consideration of the record effectively discounts the information in the municipal reports, since Adams testified he didn't know about them. We suppose, however, the two strands really ought to be combined to measure the full knowledge of the City, as a municipal corporation. See *City of Arkansas City v. Anderson*, 243 Kan. 627, 635, 762 P.2d 183 (1988) (knowledge of agents of corporate entity imputed to entity, giving it a collective "identical knowledge"). That would fortify Plaintiffs' position and our conclusion as to the potential risk and danger.

The City failed to demonstrate entitlement to summary judgment based on the recreational use immunity outlined in K.S.A. 75-6104(o) and the factual record compiled on the parties' cross-motions. The district court erred in granting the City's motion. We reverse and remand for further proceedings consistent with this decision.

14